```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SKANGA ENERGY & MARINE LIMITED,         :
                                        :
                         Plaintiff,     :    11 Civ. 4296 (DLC)
                                        :
            -v-                         :    OPINION & ORDER
                                        :
AREVENCA S.A., PETRÓLEOS DE VENEZUELA   :
S.A., and JAVIER GONZALEZ ALVAREZ,      :
                         Defendants.    :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff:

David M. Levy
Jennifer S. Smith
Michael A. Korn
Robinson Brog Leinwand Greene Genovese & Gluck PC
875 Third Avenue, 9th Floor
New York, NY 10022-6225

For Defendant PDVSA:

Lawrence H. Martin
Ronald E.M. Goodman
Vivek Krishnamurthy
Foley Hoag LLP
1875 K Street NW
Washington, DC 20006

Marjorie E. Berman
Krantz & Berman LLP
747 Third Avenue
32nd Floor
New York, NY 10017
```

DENISE COTE, District Judge:

On December 23, 2011, defendant Petróleos de Venezuela, S.A. ("PDVSA"), moved to dismiss plaintiff Skanga Energy & Marine Limited's ("Skanga") December 2 amended complaint, pursuant to Rule 12(b)(1), Fed. R. Civ. P., and the doctrine of forum non conveniens.[1]  PDVSA argues that it is immune from suit as a foreign sovereign defendant, and that Skanga has failed to establish the applicability of the commercial activity exception to immunity.  Skanga has shown that defendant Arevenca S.A. ("Arevenca") acted as PDVSA's agent in this commercial dispute and caused a direct effect in the United States justifying the exercise of jurisdiction over PDVSA.  Similarly, Skanga has shown that its choice of New York as a forum for this litigation is entitled to deference and should be honored.  PDVSA's motion to dismiss is denied.


BACKGROUND

Unless otherwise noted, the following facts are taken from Skanga's amended complaint, and assumed to be true for purposes of this motion.  Skanga, a Nigerian corporation, imports petroleum products into Nigeria with Nigerian government authorization.  It paid $11.2 million for petroleum products

---

[1] Defendants Arevenca S.A. and Javier Gonzalez Alvarez have not been served.

that PDVSA and Arevenca never delivered to Nigeria, and it seeks
a refund from the defendants.

PDVSA is "an energy corporation and monopoly owned and
operated by the Venezuelan government."   United States v. Duran,
596 F.3d 1283, 1287 (11th Cir. 2010).[2]  PDVSA has extensive
international operations, including operations in the United
States through PDVSA USA, Inc., and PDVSA's wholly-owned
subsidiary Citgo Petroleum Corporation.

In or around 2006, representatives of Skanga, including
Christian Imoukhuede ("Imoukhuede"), met in Nigeria with
Venezuelan government personnel to discuss a potential
transaction between Skanga and PDVSA.  Among the Venezuelans
with whom Skanga discussed the transaction was Enrique Arrundell
("Arrundell"), then Venezuela's trade consul to Nigeria and
currently the Venezuelan ambassador to Nigeria.  Skanga

---

[2] As described in PDVSA's expert report on Venezuelan law,
PDVSA's status as a fully state-owned enterprise is enshrined in
the Venezuelan Constitution, which provides: "For reasons of
economic and political sovereignty and national strategy, the
State shall retain all of the stock of [PDVSA] . . . ."
Constitution of the Bolivarian Republic of Venezuela
["Venezuelan Constitution"], art. 303.  Moreover, according to
PDVSA's expert, the Venezuelan Constitution establishes a
"constitutional monopoly" over state oil assets:  "Mineral and
hydrocarbon deposits existing within the national territory,
under the territorial seabed, in the exclusive economic zone and
the continental shelf, are public domain assets and, therefore,
inalienable and not subject to prescription."  Venezuelan
Constitution, art. 12.  PDVSA's expert states that PDVSA is the
"business mechanism by which [the constitutional monopoly] is
implemented."

expressed its interest in purchasing petroleum products from
PDVSA.  Arrundell told Imoukhuede that if Skanga wanted to
import oil from PDVSA, Skanga would have to work through a PDVSA
agent corporation.  The agent would deal directly with Skanga,
and would represent, speak for, and bind PDVSA.  Arrundell
informed Skanga that Arevenca was PDVSA's agent.

Arrundell offered to introduce Skanga to Arevenca in
Venezuela.  At Arrundell's invitation, Skanga representatives,
including Imoukhuede, traveled to Caracas in October 2006 to
meet with Arevenca.  Arrundell and other Venezuelan government
officials met the Skanga delegation at the Caracas airport, and
the Venezuelan officials handled immigration formalities for the
Skanga representatives.

At a meeting at a Caracas hotel, Arrundell repeated that
Skanga should work through Arevenca, PDVSA's agent, to purchase
petroleum products from PDVSA.  Arrundell introduced defendant
Javier Gonzalez Alvarez ("Alvarez"), indicating that Alvarez
represented both PDVSA and Arevenca in the negotiations with
Skanga.  Alvarez confirmed that he represented both Arevenca and
PDVSA in the negotiations.

At the meeting, Alvarez represented that PDVSA and Arevenca
were willing to enter a contract with Skanga to sell Skanga
petroleum products on credit.  PDVSA, Arevenca, and Skanga would
all be parties to the contemplated agreement, PDVSA as seller,

4

Arevenca as PDVSA's agent and shipper, and Skanga as buyer.
Alvarez explained, however, that Skanga would have to prepay
some charges in advance of delivery and to pay in full within
three months of delivery.  All payments would be made in U.S.
dollars to an Arevenca bank account in New York, because PDVSA
wished to use Skanga's payments in connection with PDVSA's U.S.-
based operations.  Arevenca would keep the pre-paid freight
charges and transmit the balance of Skanga's payments directly
to a PDVSA bank account in New York.  Skanga agreed and its
representatives returned to Nigeria.

Soon after, Arevenca made an offer to Skanga on PDVSA's
behalf to sell 35,000 metric tons of diesel fuel to Skanga for
$18.3 million.  Alvarez advised Skanga that the fuel was in a
vessel en route to Nigeria.  Alvarez provided Skanga with a
November 24, 2006 bill of lading, carrying PDVSA's corporate
logo.  It identified Arevenca as shipper and Skanga as
consignee.

Upon receipt of the documents, Skanga contacted officials
at Venezuela's Nigerian consulate.  The officials confirmed the
authenticity of the documents and the details of the
transaction.  Skanga then agreed to the purchase and wire
transferred $1,400,000, representing freight charges, to Corp
Banca, the bank designated by Arevenca in New York.

At around the same time, Alvarez offered to sell Skanga 70,000 metric tons of premium motor spirits for $35.7 million. Alvarez represented that the shipment was on a ship called the "Dignitii" en route to Nigeria.  Alvarez instructed Skanga to make a payment to an account at a New York Citibank branch. Skanga agreed to the purchase, and prepaid by wire transfer a total of $9.8 million, representing both freight charges as well as a partial payment for the product itself, to the New York Citibank account.

The two shipments did not arrive in Nigeria.  The Nigerian Ports Authority told Skanga that it had no record of either vessel entering Nigerian waters.

Skanga demanded that PDVSA and Arevenca refund the $11.2 million Skanga had transferred.  PDVSA and Arevenca have refused, however, either to deliver the shipments or to refund any of Skanga's money.


PROCEDURAL HISTORY

Skanga filed its original complaint in New York state court on July 21, 2008.  PDVSA was served on May 27, 2011.  On June 24, PDVSA removed the case to this Court, pursuant to 28 U.S.C. § 1441(d).

Skanga filed its amended complaint on December 2.  On December 23, PDVSA moved to dismiss Skanga's amended complaint. The motion became fully submitted on March 16, 2012.

DISCUSSION

PDVSA moves to dismiss Skanga's amended complaint (1) pursuant to Rule 12(b)(1), Fed. R. Civ. P., on the grounds that PDVSA is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq., and (2) under the doctrine of forum non conveniens.  These issues will be addressed in turn.

I.  The FSIA Commercial Activity Exception

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  Rogers v. Petroleo Brasileiro, S.A., 673 F.3d 131, 136 (2d Cir. 2012) (citation omitted).  "Agenc[ies] and instrumentalit[ies]" of foreign states are included in the FSIA's definition of "foreign state[s]".  28 U.S.C. § 1603. Under the FSIA, a foreign state "shall be immune from the jurisdiction of the courts of the United States and of the States," subject to certain exceptions, 28 U.S.C. § 1604, only one of which, the "commercial activity exception", § 1605(a)(2), is at issue here.

In a challenge to FSIA subject matter jurisdiction, once it is established that the defendant is a foreign sovereign, "the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." Rogers, 673 F.3d at 136 (citation omitted). Where the plaintiff satisfies that burden, "the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." Id. (citation omitted).

The so-called "commercial activity exception" to foreign state immunity provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2). "As is plain from the language of the section, each of its three clauses describes different categories of conduct for which the foreign state is denied immunity." Guirlando v. T.C. Ziraat Bankasi A.S., 602 F.3d 69, 74 (2d Cir. 2010). Skanga relies solely upon the third clause. For a foreign sovereign defendant to be subject to jurisdiction under the third clause of the commercial activity exception,

the lawsuit for which jurisdiction is sought must be
(1) based upon an act outside the territory of the
United States; (2) that was taken in connection with a
commercial activity of the foreign state outside this
country; and (3) that caused a direct effect in the
United States.

Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d
230, 236 (2d Cir. 2002) (citing Republic of Argentina v.
Weltover, Inc., 504 U.S. 607, 611 (1992)).  "The phrase 'based
upon' is read most naturally to introduce those elements of a
claim that, if proven, would entitle a plaintiff to relief under
his theory of the case."  Guirlando, 602 F.3d at 74 (citation
omitted).

It is undisputed that PDVSA is a foreign sovereign for FSIA
purposes.  Skanga asserts federal jurisdiction is proper under
the FSIA's commercial activity exception.  It asserts that a
principal-agent relationship exists between PDVSA and
Arevenca/Alvarez, which permits the acts of Arevenca and Alvarez
to be imputed to PDVSA.  PDVSA contends that Skanga has failed
adequately to plead such a relationship or to show that PDVSA's
actions caused a "direct effect" in the United States.


A.  Has Skanga Adequately Alleged an Agency Relationship?

Skanga's amended complaint asserts that PDVSA is liable due
to an actual agency relationship with Arevenca.  At the pleading
stage, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible

on its face.  A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (citation omitted).  To adequately allege an actual

agency relationship, a plaintiff need only allege facts

sufficient to support a reasonable inference of actual

authority, and its pleadings may rely upon facts that would

constitute circumstantial evidence of authority.  PDVSA does not

dispute this legal standard.

The parties have relied exclusively on the law of New York

to describe the law of agency, and in such circumstance it is

unnecessary to conduct a choice of law analysis.  See Krumme v.

WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).[3]

"Authority is the power of the agent to affect the legal

relations of the principal by acts done in accordance with the

principal's manifestations of consent to him."  Fletcher v.

---

[3] Because the FSIA "does not affect the substantive law
determining the liability of a foreign state," First Fidelity
Bank, N.A. v. Gov't of Antigua & Barbuda-Permanent Mission, 877
F.2d 189, 194 n.3 (2d Cir. 1989), the question of whether PDVSA
may be held liable for the acts of Arevenca and Alvarez on an
agency theory may ultimately be determined with reference to the
Venezuelan law of agency.  See Restatement (Second) Conflict of
Laws § 292 (1971) (choice of law questions of actual and
apparent authority subject to "most significant relationship"
test).

Atex, Inc., 68 F.3d 1451, 1461 (2d Cir. 1995) (citing Restatement (Second) of Agency § 7 (1958)).  "[A]n agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly."  Highland Capital Management LP v. Schneider, 607 F.3d 322, 327 (2d Cir. 2010).  "Actual authority is created by direct manifestations from the principal to the agent[.]"  Id. (citation omitted).  Whether actual authority exists "depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship."  Itel Containers Intern. Corp. v. Atlanttrafik Exp. Service Ltd., 909 F.2d 698, 702 (2d Cir. 1990).

Skanga's amended complaint pleads numerous facts which together support a reasonable inference that PDVSA conferred actual authority upon Arevenca and Alvarez to engage in the course of dealing described.  From beginning to end, Arrundell, Venezuela's trade consul to Nigeria, assured Skanga that it was dealing with PDVSA through PDVSA's authorized agents and confirmed all representations of agency made by Alvarez. Arrundell proposed that Skanga enter a transaction with PDVSA, introduced Skanga to Arevenca, and in conjunction with other Venezuelan officials coordinated a visit by Skanga

representatives to Caracas.  In addition, after Alvarez sent
Skanga documents related to the shipment of diesel fuel on the
P. Ventur that appeared to bind both PDVSA and Arevenca, Skanga
contacted officials at Venezuela's Nigerian embassy.  These
officials confirmed the authenticity and origin of the
documents, including a bill of lading with PDVSA's corporate
logo and a certificate of quality stating "[a]nalysis herein
were [sic] witnessed by PDVSA and Arevenca."  The amended
complaint asserts that Arrundell remains a high-ranking
Venezuelan diplomat.  He is now the Venezuelan ambassador to
Nigeria.  His role in arranging and facilitating the transaction
between PDVSA and Skanga and vouching for the agency
relationship constitutes strong circumstantial evidence of
actual authority.

While Skanga has not identified any officer or
representative of PDVSA who identified Arevenca as PDVSA's
agent, that is not necessary to plead the existence of actual
authority.  What Skanga has done is to describe in great detail
conversations, events, and documents from which it is fair to
infer the existence of actual authority.  Skanga may rely on the
statements and activities of Arrundell and other Venezuelan
officials and the critical transaction documents bearing PDVSA's
logo whose authenticity was confirmed by Venezuelan government
officials.

It is true that PDVSA and the Venezuelan government are nominally separate entities.  But, PDVSA is wholly owned by the Venezuelan state, and wields its power as the instrument established by the State to administer the State's national hydrocarbon monopoly.  Expert reports submitted by both Skanga and PDVSA attest to PDVSA's unique position within the Venezuelan constitutional system and its considerable legal powers and prerogatives.  That relationship between PDVSA and other, official organs of the Venezuelan state permits the inference that Venezuelan diplomats and other government officials are empowered to speak on behalf of both the Venezuelan government and its organ PDVSA and to describe PDVSA's agency relationship with Arevenca, and confirm the authenticity of PDVSA documents.  Skanga provided strong circumstantial evidence at the pleading stage to establish a reasonable inference of a PDVSA agency relationship with Arevenca.

PDVSA challenges Skanga's use of third party statements confirming an agency relationship to support its allegation that Arevenca acted with authority.  As PDVSA notes, a finding of authority must be predicated either on manifestations from the principal to the agent or from the principal to the plaintiff, not from a third-party to the plaintiff.  See, e.g., Fletcher, 68 F.3d at 1461–62; Cromer Finance Ltd. v. Berger, 137 F.Supp.2d

13

452, 486-87 (S.D.N.Y. 2001).  But, Skanga does not rely upon a
theory of apparent authority, which would require Skanga to
allege statements or actions by PDVSA itself reasonably giving
the appearance that Arevenca acted with PDVSA's authority in
conducting the transaction.  Skanga instead relies upon the
statements and actions of Arrundell and other third parties to
support its theory of actual authority, and PDVSA does not
dispute that in some circumstances third party manifestations of
an agency relationship may support a reasonable inference at the
pleading stage that that relationship exists.  As discussed
above, those circumstances are present here.

     PDVSA argues that more facts are required for Skanga to
successfully plead an agency relationship between PDVSA and
Arevenca/Alvarez.  But under the "reasonable inference"
standard, which PDVSA concedes applies, Skanga has carried its
burden of pleading that an agency relationship existed.  Any
competing set of inferences would require one to speculate that
Arrundell and other Venezuelan officials were engaged in a
scheme to defraud Skanga, that PDVSA remained ignorant of the
scheme, and that Venezuela itself chose to reward Arrundell by
appointing him its Ambassador to Nigeria.  Even if these
competing inferences could also be deemed plausible, dismissal
would not be appropriate.  "The choice between or among
plausible inferences or scenarios is one for the factfinder,"

and a court ruling on a Rule 12 motion "may not properly dismiss a complaint that states a plausible version of . . . events merely because the court finds a different version" plausible. Anderson News, L.L.C. v. American Media, Inc., ---F.3d---, 2012 WL 1085948, at *19 (2d Cir. 2012).

Finally, PDVSA argues that because, in its view, Skanga fails adequately to allege an agency relationship under the Rule 8 pleading standards, then a fortiori, Skanga also fails adequately to allege an agency relationship under the Rule 9(b) heightened pleading standard for allegations of fraud.  See Fed R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]").  As discussed above, the amended complaint alleges specific facts giving rise to a reasonable inference of an agency relationship between PDVSA and Arevenca/Alvarez; it does not rely upon conclusory assertions of agency.  Thus, it satisfies any additional burden to plead the existence of an agency relationship that may arise from its assertion of a fraud claim.

B.  Did PDVSA's Actions Cause a "Direct Effect" in the U.S.?

    PDVSA also asserts that it is entitled to sovereign immunity because Skanga has failed to allege that PDVSA's actions caused a direct effect in the United States.  "[A]n effect is 'direct' if it follows as an immediate consequence of

15

the defendant's activity." Weltover, 504 U.S. at 618 (citation omitted).  "The common sense interpretation of a 'direct effect' within the meaning of § 1605(a)(2) is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." Rogers, 673 F.3d at 139 (citation omitted).  The direct effect requirement is satisfied where the parties to a transaction, including the sovereign defendant, specifically agree or specifically contemplate that payment will be made to a United States bank account, and the plaintiff's cause of action arises out of that transaction.  Id.

PDVSA's activities caused a direct effect in the United States.  The amended complaint alleges that PDVSA, through its agents, required Skanga to pay for petroleum products by wire transfer of U.S. dollars to New York bank accounts.  Skanga duly deposited millions of dollars into the New York accounts.  Skanga's allegations that it made deposits in New York bank accounts pursuant to specific instructions dictated by PDVSA establish the requisite direct effect within the United States of PDVSA's activities abroad.

PDVSA does not dispute that when parties specifically require or contemplate the payment of funds into New York accounts, the payment of those funds constitutes a "direct effect" in the United States.  Instead, PDVSA argues that the transmittal to a New York bank was not an essential feature of

this transaction since Arevenca could have chosen to instruct Skanga to transmit the funds elsewhere and Arevenca could have thereafter sent the funds to PDVSA in New York.  Skanga is not required to show that the transaction could have occurred no way other than through a direct transfer of funds to New York.  The fact that it did make such a transfer pursuant to Arevenca's instructions is sufficient to plead a direct effect in the United States caused by PDVSA's overseas activities.  PDVSA has failed to meet its burden of persuasion that the FSIA's commercial activities exception does not apply, and this Court may exercise jurisdiction.

II.  Forum Non Conveniens

     PDVSA also moves for dismissal under the doctrine of forum non conveniens.  "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  Norex Petroleum Limited v. Access Industries, Inc., 416 F.3d 146, 153 (2d Cir. 2005) (citation omitted).  Courts in this circuit follow a three-step inquiry in determining whether a suit should be dismissed under the doctrine.  See Iragorri v. United Technologies Corp., 274 F.3d 65, 71-75 (2d Cir. 2001) (en banc).

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex, 416 F.3d at 153 (citation omitted).


A.  Degree of Deference to Skanga's Forum Choice

"Any review of a forum non conveniens motion starts with a strong presumption in favor of the plaintiff's choice of forum"; "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. at 154 (citation omitted).  Nevertheless, "the degree of deference given to a plaintiff's forum choice varies with the circumstances." Iragorri, 274 F.3d at 71.  "Usually, the greatest deference is afforded a plaintiff's choice of its home forum, while 'less deference' is afforded a foreign plaintiff's choice of a United States forum." Norex, 416 F.3d at 154 (citation omitted).

The Second Circuit has instructed that district courts should locate the degree of deference to be afforded a plaintiff's forum choice "on a sliding scale depending on the degree of convenience reflected by the choice in a given case." Id. (citing Iragorri, 274 F.3d at 71).

The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.  Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens.  On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

Id. at 154-55 (citation omitted).  Factors that support greater

deference to the plaintiff's forum choice include

the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.

Iragorri, 274 F.3d at 72.  But,

the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands[.]

Id.

Applying these principles, Skanga's forum choice is entitled to considerable deference.  There is a bona fide connection between the subject matter of Skanga's lawsuit and the chosen forum.  Skanga transferred millions of dollars into bank accounts located in New York for PDVSA's benefit.  The complaint alleges that PDVSA retained Skanga's money in the U.S. rather than dispersing it internationally.  Skanga's money disappeared down the rabbit hole in New York, and Skanga wishes to follow it.  To do so, it will likely seek discovery from New York banks and PDVSA's U.S. operations.  While Skanga's forum choice is not entitled to the maximum possible deference afforded a local plaintiff's forum choice, it is nevertheless entitled to considerable deference based upon the bona fide connection between its lawsuit and New York.

B.  Availability of an Adequate Alternative Forum

Forum non conveniens dismissal "is not appropriate if an adequate and presently available alternative forum does not exist."  Abdullahi v. Pfizer, Inc., 562 F.3d 163, 189 (2d Cir. 2009).  While "[a] forum in which defendants are amenable to service of process and which permits litigation of the dispute is generally adequate[,] [s]uch a forum may nevertheless be inadequate if it does not permit the reasonably prompt adjudication of a dispute, if the forum is not presently

20

available, or if the forum provides a remedy so clearly
unsatisfactory or inadequate that it is tantamount to no remedy
at all." Id. (citation omitted).  "[T]he plaintiff bears the
initial burden of producing evidence of corruption, delay or
lack of due process in the foreign forum, [but] the defendant
bears the ultimate burden of persuasion as to the adequacy of
the forum."  Id.

PDVSA proposes two adequate alternative fora for this suit,
Venezuela and Nigeria.  Skanga disputes whether these fora are
available and adequate.  The parties have submitted expert
reports on both the Venezuelan and Nigerian legal systems.  It
is unnecessary, however, to decide whether Venezuela and Nigeria
are adequate alternative fora; even assuming that they are, the
balancing of private and public interest factors tip decisively
in favor of Skanga's forum choice.


C.  Private and Public Interest Factors

If an adequate alternative forum exists, then in the final
step of the forum non conveniens analysis a court must "balance
two sets of factors to ascertain whether the case should be
adjudicated in the plaintiff's chosen forum or in the
alternative forum proposed by the defendant."  Iragorri, 274
F.3d at 73.  "Private interest factors" include: "the relative
ease of access to sources of proof; availability of compulsory

21

process for attendance of unwilling, and the cost of obtaining

attendance of willing, witnesses; possibility of view of

premises, if view would be appropriate to the action; and all

other practical problems that make trial of a case easy,

expeditious and inexpensive." Id. at 73-74 (citation omitted).

Private interest factors focus on the "convenience of the

litigants", and "the court should focus on the precise issues

that are likely to be actually tried, taking into consideration

. . . the availability of witnesses and the evidence needed for

trial of these issues." Id. at 74.

    "Public interest factors" must also be considered.

    [P]ublic interest factors include the administrative
    difficulties flowing from court congestion; the local
    interest in having localized controversies decided at
    home; the interest in having the trial of a diversity
    case in a forum that is at home with the law that must
    govern the action; the avoidance of unnecessary
    problems in conflict of laws, or in the application of
    foreign law; and the unfairness of burdening citizens
    in an unrelated forum with jury duty.

Gross v. British Broadcasting Corp., 386 F.3d 224, 233 (2d Cir.

2004) (citation omitted).  The Second Circuit has recently noted

that public interest factors weigh in favor of dismissal where

"the litigation is intimately involved with sovereign

prerogative," for example, where "it is important to ascertain

the meaning of another jurisdiction's statute from the only

tribunal empowered to speak definitively." Figueiredo Ferraz

Engenharia de Projeto LTDA v. Republic of Peru, 665 F.3d 384, 392 (2d Cir. 2011) (citation omitted).

As discussed, Skanga's forum choice is entitled to considerable deference, and PDVSA would have to make a strong showing that private and public interest factors render either Venezuela or Nigeria the more convenient forum to gain forum non conveniens dismissal. As it happens, private interest factors are balanced between New York and Venezuela, while public interest factors favor New York.

As noted, the private interest inquiry into convenience of the litigants focuses on the specific issues likely to be significant in this case, and the availability of witnesses and sources of proof to try those issues. The allegations in Skanga's amended complaint suggest that a paramount concern of the parties in this action will be whether PDVSA received Skanga's payments, and used them to fund PDVSA's American operations as alleged in the amended complaint. The witnesses and evidence necessary to follow Skanga's money will be predominately located in the United States, and especially in New York. Other key issues in this case are the relationship between PDVSA and Arevenca and the events that transpired when Skanga representatives travelled to Caracas. Witnesses and evidence as to these significant issues will be located

predominately in Venezuela, with some party witnesses located in Nigeria.

In sum, the key issues in this case are likely to be tried with witnesses and evidence presently located in the United States and Venezuela.  Fewer witnesses and less evidence of significance are presently located in Nigeria; the bulk of that proof is in any event under the control of Skanga.  Private interest factors bearing on the parties' convenience are evenly balanced between New York and Venezuela, and tip decidedly against litigation in Nigeria.

PDVSA argues that private interest factors render Venezuela or Nigeria substantially more convenient fora than New York. First, PDVSA argues that virtually all sources of proof are located in either Venezuela or Nigeria.  In doing so, PDVSA ignores the allegations in the amended complaint that Skanga was induced to wire transfer millions of dollars to New York bank accounts, funds that purportedly would be used in connection with PDVSA's American operations.  Important sources of proof relating to these allegations are likely to be located in New York.  PDVSA also argues that litigation has already proved inconvenient in this forum, because Arevenca and Alvarez have not yet been served.  PDVSA does not suggest, however, that these two defendants are not amenable to suit in New York or that Venezuela will frustrate Skanga's efforts to serve them.

24

Substantial public interest factors favor retention of this
case in New York.  Skanga's amended complaint alleges that the
defendants availed themselves of the protection of the New York
banking system to perpetrate a fraud.  As an international
financial center, New York has a great interest in the integrity
of its banking system.  That interest encompasses local inquiry
into allegations that New York banks have been used to harbor
ill-gotten gains.

PDVSA argues that this is a dispute between Venezuelans and
Nigerians, likely governed by the law of either Venezuela or
Nigeria, and the American public interest is not implicated.
PDVSA again ignores this suit's link to the New York banking
system, and New York's public interest in the integrity of that
system.  PDVSA also briefly raises generalized concerns about
this District's crowded docket.  These concerns about local
court congestion do not outweigh the substantial public interest
identified above that counsel against dismissal.

To sum up, private interest factors are balanced between
New York and Venzuela, while Nigeria is a far less convenient
forum.  Public interest factors weigh against dismissal.  Since
Skanga's forum choice is entitled to substantial deference,
dismissal is not appropriate.  PDVSA has fallen short of
demonstrating that Skanga's amended complaint should be
dismissed on forum non conveniens grounds.

CONCLUSION

PDVSA's December 23, 2011 motion to dismiss Skanga's

amended complaint is denied.

SO ORDERED:

Dated:   New York, New York
         June 20, 2012

_____
                    DENISE COTE
            United States District Judge